IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR NO. 2:21-cr-286-ECM-JTA |
| | ) |
| PERRY LANE DAVIS | ) |

### **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the court on the Motion to Dismiss Indictment filed by Defendant Perry Lane Davis ("Davis"). (Doc. No. 14.) Davis is charged with failing to register as a sex offender, as required by the Sex Offender Registration Notification Act ("SORNA"), 42 U.S.C. §§ 16901, *et seq.*,[1] in violation of 18 U.S.C. § 2250(a). Davis argues SORNA is unconstitutional as applied to him because his federal sex offense conviction preceded the federal government's implementation of registration requirements. The court held oral argument on the motion on August 3, 2021.

After due consideration of the parties' arguments, stipulated facts, and applicable law, the undersigned concludes that the motion to dismiss is due to be denied.

### **I.    BACKGROUND AND PROCEDURAL HISTORY**

On August 24, 1982, Davis was indicted for numerous criminal offenses, including committing a rape on Fort Rucker on August 17, 1982, in violation of 18 U.S.C. § 2031. (Doc. No. 14-2 at 1-2; *United States v. Davis,* Case No. 82-21 (M.D. Ala.); Doc. No. 14 at 2, 5.) On February 1, 1983, Davis pled guilty to the rape charge and the remaining charges

---

[1] SORNA is now found at 34 U.S.C. §§ 20901-20932.

were dismissed. (Doc. No. 14-2 at 3; Doc. No. 25-1.) On the same date, this court sentenced Davis to thirty years imprisonment. (*Id*.)

Thirteen years later, on November 16, 1996, Davis was released on federal parole.[2] (Doc. No. 25 at ¶ 5.) His parole was revoked on August 28, 2000. (*Id*. at ¶ 6.) Davis was released on parole a second time on November 29, 2000. (*Id*. at ¶ 7.) In November 2002, Davis was convicted of a state offense and was placed in state custody. (*Id*. at ¶ 8.) Davis was released from state custody on September 15, 2015, and his second term of federal parole was revoked on February 6, 2016 due to the 2002 state conviction. (*Id*. at ¶ 8.) He was released on federal parole a third time on January 18, 2018. (*Id*. at ¶ 9.) Davis remains on federal parole and is currently scheduled to remain on parole through June 1, 2027. (*Id*. at ¶ 10.)

On June 8, 2021, a grand jury sitting in the Middle District of Alabama returned an indictment charging that, beginning on or before February 10, 2021, and continuing until on or about March 23, 2021, in Montgomery County, within the Middle District of Alabama, Davis, an individual required to register under SORNA by reason of a conviction under federal law, knowingly failed to register as a sex offender as required by SORNA, in violation of 18 U.S.C. § 2250. (Doc. No. 1.) Davis entered a plea of not guilty during his arraignment on June 16, 2021. (Doc No. 10.)

On July 19, 2021, Davis filed this motion to dismiss indictment. (Doc. No. 14.) The Government filed its response in opposition on July 28, 2021 (Doc. No. 21) and Davis

---

[2] The judgment and commitment order makes no reference to parole. (Doc. No. 25-1.)

2

filed a reply (Doc. No. 22). During oral argument on the motion, the court ordered the parties to submit additional briefing. The parties filed their supplemental briefs (Docs. No. 24, 26) and also filed joint stipulations of fact (Doc. No. 25).

This matter is ripe for disposition.

## II.   MOTION TO DISMISS

Davis moves to dismiss the indictment on the ground that there is no constitutional authority to enforce SORNA against him because he committed the federal sex offense in 1982 which predates SORNA and its predecessor, the Wetterling Act.[3] (Doc. No. 14 at 2.) He acknowledges Congress' authority to legislate over matters related to interstate commerce through the Commerce Clause of the United States Constitution, as in the case of convicted sex offenders who engage in interstate travel and who knowingly fail to register or update a registration as required by SORNA. (*Id*. at 3; *see* 18 U.S.C. § 2250(a)(1), (2)(B) and (3).) Davis argues however there is no allegation of interstate activity for the SORNA offense against him,[4] thus Congressional authority under the Commerce Clause is inapplicable. (Doc. No. 14 at 3-4.) Davis also acknowledges that the United States Supreme Court held in *United States v. Kebodeaux*, 570 U.S. 387, 391 (2013), that a decision by Congress to require those convicted of certain military sex

---

[3] Although Davis does not cite any rule of criminal procedure as authority for dismissal of the indictment, the court views his motion as a motion for dismissal for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

[4] Davis represents that he "has consistently registered a residence in Union Springs and employment in Montgomery." (Doc. No. 14 at 1, ¶ 2; *see* Doc. No. 14-1, Davis Registration in Bullock County, Alabama dated February 8, 2021.) The Government asserts the "instant failure to register case arises from an investigation that has shown that [Davis] was regularly residing at an address in Montgomery, Alabama without registering that address." (Doc. No. 21 at 2.)

offenses to register was an appropriate exercise of its powers under the Necessary and Proper Clause of the United States Constitution, but he argues that the holding in *Kebodeaux* is not applicable to him because, unlike his conviction, the conviction at issue in *Kebodeaux* occurred <u>after</u> the enactment of the Wetterling Act. (*Id*. at 3-5.) Davis contends that no federal registration scheme existed at the time he committed the federal sex offense in 1982, thus the Government lacks authority to prosecute him under SORNA. (Doc. No. 22 at 3.)

The Government counters that Davis' status as a federal sex offender who was either incarcerated or on federal parole since his 1983 conviction renders him subject to SORNA's criminal penalties. (Doc. No. 21 at 3-5; *see* 18 U.S.C. § 2250(a)(1), (2)(A) and (3).) The Government concedes Davis' federal rape conviction predated SORNA, but argues Davis was on federal parole for that federal sex offense at the time of SORNA's enactment and when the Wetterling Act began to apply to him. (*Id*. at 1; Doc. No. 26 at 7.) The Government asserts the holding in *Kebodeaux* is applicable to Davis because "SORNA is a necessary and proper means of carrying into execution [Congress'] enumerated and implied powers." (Doc. No. 21 at 5, 7.) The Government cites to *United States v. Coppock*, 765 F.3d 921 (8th Cir. 2014) to argue that SORNA's registration requirements and criminal provision fall within Congress' constitutional authority under the Necessary and Proper Clause to act as a responsible federal custodian of a sex offender who was on federal parole at the time SORNA was enacted. (*Id*. at 8, 10.)

### III.   DISCUSSION

On September 13, 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Wetterling Act"), Pub. L. No. 103–322, Title XVII, §§ 170101–170303, 108 Stat. 1796, 2038–45 (1994).  The Wetterling Act "set national standards for state sex-offender registration programs in 1994, but Congress did not include any federal criminal liability." *Carr v. United States*, 560 U.S. 438, 452 (2010).  "Congress instead conditioned certain federal funds on States' adoption of 'criminal penalties' on any person 'required to register under a State program . . . who knowingly fails to so register and keep such registration current.' " *Id*. (citation omitted). In 1996, Congress "supplemented state enforcement mechanisms by subjecting to federal prosecution any covered sex offender who 'changes address to a State other than the State in which the person resided at the time of the immediately preceding registration' and 'knowingly fails to' register as required." *Id*.  In 1998, the Wetterling Act was amended to impose "federal penalties upon federal sex offenders who failed to register in the States in which they lived, worked, and studied." *United States v. Kebodeaux*, 570 U.S. 387, 391 (2013) (citation omitted); Pub. L. 105-227, 112 Stat. 2681 (1998).

"In 2006, Congress replaced the Wetterling Act with [SORNA], 120 Stat. 590, 42 U.S.C. § 16901 *et seq*."  *Nichols v. United States*, 136 S. Ct. 1113, 1116 (2016).  Congress enacted SORNA "to make more uniform what had remained 'a patchwork of federal and 50 individual state registrations systems[.]' " *Kebodeaux*, 570 U.S. at 399 (quoting *Reynolds v. United States*, 565 U.S. __, 132 S. Ct. 975, 978 (2012)). In SORNA, "Congress made it a federal crime for a sex offender who meets certain requirements to 'knowingly

5

fai[l] to register or update a registration as required by [SORNA].'" *Id.* (citing 18 U.S.C. § 2250(a)(3); *Carr*, 560 U.S. at 441–442). Under SORNA, convicted sex offenders are required to maintain current registrations with local authorities in each jurisdiction where they reside, work or attend school. 34 U.S.C. § 20913 (formerly 42 U.S.C. § 16913). A person who fails to register as required may be criminally prosecuted under 18 U.S.C. § 2250. Section 2250 imposes criminal liability on two categories of persons who knowingly fail to adhere to the registration requirements: (1) any person who is a sex offender due to a conviction under federal law (18 U.S.C. § 2250(a)(2)(A)); and (2) any person required to register under SORNA who travels in interstate or foreign commerce (18 U.S.C. § 2250(a)(2)(B)).[5] *See also United States v. Rivers*, 588 F. App'x 905, 907 (11th Cir. 2014). In 2007, the Attorney General declared that SORNA's registration requirements applied to sex offenders whose convictions preceded enactment of SORNA. *See Reynolds v. United States,* 565 U.S. 432, 445 (2012) (concluding SORNA's "registration requirements do not

---

[5] 18 U.S.C. § 2250 states:

> (a) In general.--Whoever--
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

6

apply to pre-Act offenders until the Attorney General so specifies"); *Gundy v. United States*, __ U.S. __, 139 S. Ct. 2116, 2122 (2019) ("The Attorney General issued an interim rule in February 2007, specifying that SORNA's registration requirements apply in full to sex offenders convicted of the offense for which registration is required prior to the enactment of that Act. . . . The [Attorney General's] final rule, issued in December 2010, reiterated that SORNA applies to all pre-Act offenders. . . . That rule has remained the same to this day.") (internal quotations and citations omitted).

"By 1996, every State, the District of Columbia, and the Federal Government had enacted some variation of [a sex offender registration law.]" *Smith v. Doe*, 538 U.S. 84, 90 (2003). Alabama first enacted a sex offender registration law in 1967, decades before the Wetterling Act was passed. *See* Ala. Act No. 1967-507; *Doe 1 v. Marshall,* 367 F. Supp. 3d 1310, 1319 (M.D. Ala. 2019) ("The State of Alabama enacted its first sex-offender statute over five decades ago.") (citing Ala. Act No. 1967-507). However, the law only addressed persons convicted of a sex offense under Alabama law and was not amended to include federal sex offenders, like Davis, until 1998. *See* Ala. Act No. 1998-489. Although the law has been amended several times,[6] Davis does not dispute its continued applicability to him. (*See* Doc. No. 24 at 3.)

The Supreme Court addressed the application of the Wetterling Act and SORNA to a federal defendant who had completed his sentence prior to SORNA's enactment in

---

[6] The current statute is the Alabama Sex Offender Registration and Community Notification Act, Ala. Code § 15-20A-1, *et seq.*

*Kebodeaux*. *See Kebodeaux*, 570 U.S. at 389. Anthony Kebodeaux, a former member of the United States Air Force, was convicted in 1999 by a court-martial for a federal sex offense. *Id.* at 390. Kebodeaux served his three-month sentence and was required to register as a sex offender under the Wetterling Act. *Id*. at 392-393. Kebodeaux registered with state authorities in Texas in 2004. *Id.* at 390. In 2007, after the passage of SORNA, Kibodeaux moved within Texas and updated his registration. *Id.* Later that year, he made another intrastate move and failed to update his registration. *Id.* Kebodeaux was charged with and convicted of violating SORNA. *Id.* On appeal, a panel of the Fifth Circuit Court of Appeals initially upheld the conviction. *Id.* Yet, upon a rehearing en banc, the Fifth Circuit reversed the conviction, finding "by the time Congress enacted SORNA, Kebodeaux had 'fully served' his sex-offense sentence; he was 'no longer in federal custody, in the military, under any sort of supervised release or parole, or in any other special relationship with the federal government.' " *Id.* "[I]n the [Fifth] Circuit's view, Kebodeaux had been '*unconditionally* let . . . free.' " *Id.* (emphasis in original).

The Supreme Court disagreed with the Fifth Circuit's conclusion. *Id.* at 390. The Supreme Court first determined that Kebodeaux's release was not " 'unconditional,' *i.e.,* that after Kebodeaux's release, he was not in 'any . . . special relationship with the federal government.' " *Id*. (citation omitted). The Court discussed that Kebodeaux had been continuously subject to two different subsections of the Wetterling Act from the time of his release from prison and found that those registration requirements were very similar to those that SORNA later imposed. *Id*. at 391-393. The Court also found that the military sex offense of which Kebodeaux was convicted was an exercise of Congress' authority

8

granted to it by the Military Regulation Clause[7] and the Wetterling Act, "as applied to military sex offenders like Kebodeaux," fell within the scope of the Necessary and Proper Clause. [8]  *Id*. at 394.  The Court determined that Kebodeaux was not "an individual who had, prior to SORNA's enactment, been 'unconditionally released,' " but rather was "an individual already subject to federal registration requirements [*i.e.*, the Wetterling Act] that were themselves a valid exercise of federal power."  *Id*. at 397.  The Court held that SORNA, which made few changes to the Wetterling Act, also fell within "the scope [of] Congress's authority under the Military Regulation and Necessary and Proper Clauses" as applied to Kebodeaux.  *Id*. at 399.  Therefore, the Court concluded that Congress could constitutionally apply SORNA's requirement to an individual like Kebodeaux who had been continuously subject to valid federal registration requirements after his release from prison.  *Id*. at 397.

In *Coppock*, the Eighth Circuit Court of Appeals examined the constitutionality of SORNA as applied to a defendant whose qualifying offense and conviction occurred before the Wetterling Act.  *See Coppock*, 765 F.3d at 922.  Specifically, the Eighth Circuit considered whether "Congress had authority, under the Military Regulation and Necessary and Proper Clauses, . . . to impose SORNA's registration requirements on a federal sex offender who was on parole for his federal sex offense at the time of SORNA's enactment,

---

[7] In the Military Regulation Clause, the Constitution grants Congress the power to "make Rules for the  . . . Regulation of the land and naval Forces." U.S. Const., Art. I, § 8, cl. 14.

[8] In the Necessary and Proper Clause, the Constitution vests in Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const., Art. I, § 8, cl. 18.

9

and to enforce those requirements through the criminal prohibition of § 2250(a)." *Id*. at 923. Because "Coppock's sex offense and conviction occurred prior to both the enactment of SORNA and the enactment of the Wetterling Act," the Eighth Circuit reasoned "SORNA [as applied to Coppock] cannot be justified as a necessary and proper modification of federal registration requirements already in place at the time of Coppock's offense and conviction[,]" as it was in *Kebodeaux*. *Id*. at 924. However, the Eighth Circuit found that the Supreme Court in *Kebodeaux* "did not hold that Congress's power to require registration by federal sex offenders was limited to offenders who violated military regulations after the Wetterling Act came into effect." *Id*. The Eighth Circuit noted that Coppock, unlike Kebodeaux, was still on federal parole when the Wetterling Act and SORNA were enacted; he was not unconditionally released. *Id*. The Eighth Circuit explained:

> The Court in *Kebodeaux* . . . declared that " 'it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision.' " 133 S. Ct. at 2504 (quoting *Carr v. United States*, 560 U.S. 438, 452, 130 S. Ct. 2229, 176 L. Ed. 2d 1152 (2010)). The government's interest in keeping track of former federal prisoners to prevent further crimes applies with equal force to a pre-Wetterling Act offender who is still on parole for a federal sex offense as it does to one who commits his offense after the Act's passage. And Justice Alito, concurring in the judgment in *Kebodeaux*, deemed it necessary and proper for Congress to require registration of members of the military who are convicted of a qualifying sex offense in federal court, because the exercise of military jurisdiction may supersede state prosecutions and thereby create a gap in the laws intended to maximize the registration of sex offenders. *Id*. at 2508–09 (Alito, J., concurring in the judgment). The same gap-filling rationale presumably would apply to a parolee who was prosecuted by federal authorities for a sex offense before a federal registration requirement was developed.

*Id.* at 925. The Eighth Circuit thus concluded that the Supreme Court's "most recent applications of the Necessary and Proper Clause counsel that the SORNA registration requirements and criminal sanctions for noncompliance are constitutional as applied to Coppock." *Id.* The Eighth Circuit noted though "[o]ur decision here applies only to a sex offender who—at the time the registration requirements came into effect—was under federal parole supervision based on a conviction under federal law, and thus remained in a special relationship with the federal government." *Id.* (internal quotation marks omitted).

In light of *Kebodeaux* and *Coppock*, the undersigned concludes that Davis' as-applied challenge to SORNA must fail. First, Davis concedes his federal sex offense conviction was authorized by the Constitution under the Enclave Clause, U.S. Const. Art. I, § 8, cl. 17.[9] (Doc. No. 14 at 5.) Second, Davis has been in a "special relationship with the federal government" for nearly 30 years. It is undisputed that Davis is a federal sex offender who has been either on federal parole or in federal custody since February 1983 and he is scheduled to remain under federal parole supervision through June 1, 2027. (Doc. No. 25 at ¶¶ 3; 5-10.) He was in a "special relationship with the federal government" in

---

[9] The Enclave Clause provides,

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[.]" '

U.S. Const. Art. I, § 8, cl. 17.

1994, when Congress enacted the Wetterling Act, as he was in federal custody serving his term of imprisonment. (Doc. No. 25 at ¶¶ 4, 5.) He was in a "special relationship with the federal government" in 1998, when Congress amended the Wetterling Act to impose federal penalties upon federal sex offenders, 42 U.S.C. § 14072, as he was on federal parole.[10] (Doc. No. 25 at ¶¶ 5, 6.) He was in a "special relationship with the federal government" in 2006, when Congress enacted SORNA, as he was on federal parole. (Doc. No. 22 at 1.) Further, Davis concedes he was subjected to the registration requirements of § 14072 and those registration requirements continued through the enactment of SORNA in 2006. (Doc. No. 24 at 4.) Because Davis was subject to the registration requirements under the Wetterling Act and its successor SORNA, and he maintained a "special relationship with the federal government" and was not "unconditionally released" at the time of the enactment of both statutes, the undersigned concludes, in light of *Kebodeaux* and *Coppock*, " 'the Necessary and Proper Clause authorized Congress to modify the requirement' already applicable to [Davis] through the Wetterling Act." *Kebodeaux*, 133 S. Ct. at 2502; *Coppock*, 765 F.3d at 924. Because Davis was subject to the Wetterling Act, *Kebodeaux* and *Coppock* compel the conclusion that Congress had the authority under the Necessary and Proper Clause to hold Davis to SORNA's registration requirements and subject him to the criminal penalties. *See United States v. Brune*, 767 F.3d 1009, 1015-1016 (10th Cir. 2014) (applying *Kebodeaux* to hold SORNA is constitutional as applied to

---

[10] Davis does not dispute that the Wetterling Act required him to register starting in 1998. (Doc. No. 24 at 4) ("Mr. Davis contends that the Wetterling Act facially required him to register starting in 1998 or 1999 when he was on parole for his 1982 offense.").

a "federal sex offender who was never unconditionally released from federal supervision" since his 2001 federal conviction); *United States v. Elk Shoulder*, 738 F.3d 948, 958 (9th Cir. 2013) (applying *Kebodeaux* to hold SORNA is constitutional as applied to a federal sex offender who was "continuously subject to federal conditions under the Wetterling Act from the time of his release from prison through the time of SORNA's enactment"); *United States v. Saul*, No. 8:14CR347, *report & rec. adopted by* 2015 WL 757337 (D. Neb. Feb. 23, 2015) (rejecting argument of federal sex offender, who was convicted after the enactment of the Wetterling Act, that Congress lacked authority under the Necessary and Proper Clause to impose registration requirements on him).

Finally, the court is not persuaded by Davis' argument that *Kebodeaux* is inapplicable to his case because the Wetterling Act was not enacted prior to the date of his federal sex offense conviction. (Doc. No. 14 at 4-5; Doc. No. 22 at 2.) The court in *Saul* eloquently stated,

> The Supreme Court in *Kebodeaux* does not directly address what event, the offense, conviction, or release, must occur prior to enactment of the Wetterling Act. Nevertheless, *Coppock* illustrates a necessary federal nexus may still exist to provide Congress authority to regulate a defendant like Saul even if an offense occurs prior to the Wetterling Act's enactment. Further, the court will not limit *Kebodeaux* because of a perceived ambiguity in the absence of such limiting language or authority.

*Saul*, No. 8:14CR347, 2015 WL 757337, at *5. The undersigned agrees. As the Eighth Circuit stated in *Coppock*, "[t]he government's interest in keeping track of former federal prisoners to prevent further crimes applies with equal force to a pre-Wetterling Act offender who is still on parole for a federal sex offense as it does to one who commits his offense after the Act's passage." *Coppock*, 765 F.3d at 925. This court declines to limit

13

the application of *Kebodeaux* when the majority opinion binds this court and the Supreme Court in the majority opinion did not state that such limitation was required. Accordingly, Davis is bound by *Kebodeaux* and the motion to dismiss the indictment is due to be denied.

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to dismiss the indictment (Doc. No. 14) be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **September 7, 2021.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 24th day of August, 2021.

_/s/ Jerusha J. Adams_
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE